**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No:**

Global Weather Productions LLC,

Plaintiff,

v.

Prestige Insurance Estimating and Appraisal, Inc., and Prestige Claim Consultants Corp.,

Defendants.
_________________________________/

JURY TRIAL DEMANDED

SLG SANDERS · LAW GROUP ·

## COMPLAINT

Plaintiff Global Weather Productions LLC ("*Plaintiff*"), by and through its undersigned counsel, for its Complaint against defendants Prestige Insurance Estimating and Appraisal, Inc. ("*PIEA*") and Prestige Claim Consultants Corp. ("*PCC*") (together, "*Prestige*" or "*Defendants*") states and alleges as follows:

## INTRODUCTION

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq*.

2. Michael Brandon Clement ("*Clement*") and Jonathan Petramala ("*Petramala*") created video recordings of tornado damage in Panama City Beach, Florida ("*Video 1*"), of a storm surge from Hurricane Debby in Suwannee, Florida ("*Video 2*"), and of a storm surge in Surfside Beach, Texas ("*Video 3*") (hereinafter referred to collectively as the "*Videos*") in which Plaintiff owns the rights and licenses for various uses including online and print publications.

3. Prestige owns and operates social media accounts on Instagram known as prestigeclaims ("*Account 1*") and on Facebook known as prestigeclaims ("*Account 2*")

(collectively, the "Accounts").

4. Prestige, without authorization, reproduced and publicly displayed the Videos in connection with its commercial activities and engaged in this misconduct knowingly and in violation of the United States copyright laws.

5. Prestige is a public adjusting firm that solicits property owners to retain it to pursue insurance claims for storm damage. Prestige used Plaintiff's footage of storm devastation to advertise those very services, publishing each Video on the same day as, or the day after, Plaintiff first published it, together with solicitations such as "[o]ur team of public adjusters is ready to take on your case and represent you against your insurance company" and "[l]et us help you get the most out of your insurance claim."

## PARTIES

6. Plaintiff is a Texas limited liability company and maintains a principal place of business in Hutchinson County, Texas.

7. Defendant PIEA is a Florida corporation with a principal place of business at 16170 NE 11 Ct, North Miami in Miami-Dade County, Florida. PIEA was incorporated on June 28, 2011, under Florida Department of State Document No. P11000059728, and its President, director, and registered agent is Cristina Sanchez.

8. Defendant PCC is a Florida corporation with a principal place of business at 16170 NE 11 Ct, North Miami Beach, in Miami-Dade County, Florida. PCC was incorporated on April 27, 2010, under Florida Department of State Document No. P10000036197, and its President and registered agent is Obed Arias.

9. PIEA and PCC share a principal place of business and, upon information and belief, jointly own, operate, and profit from the public adjusting business marketed as "Prestige Claims," including the Accounts. Each allegation of conduct by Prestige is made against each Defendant, and Defendants are jointly and severally liable for the infringements alleged herein.

SLG SANDERS · LAW GROUP ·

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

11. Each Defendant is subject to the general personal jurisdiction of this Court because each Defendant is incorporated under the laws of Florida and maintains its principal place of business in Miami-Dade County, Florida, within this District.

12. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Prestige may be found in this District, regularly conducts business in this District, and a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District, including the unauthorized reproduction, display, distribution, and/or exploitation of Plaintiff's copyrighted work.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff's Copyright Ownership

13. Plaintiff is a professional videography company that commercially licenses footage of hurricanes, tornadoes, floods, and other severe weather to news organizations, media companies, and commercial users.

14. Clement is a professional storm chaser and aerial cinematographer who has documented hurricanes, tornadoes, floods, and other extreme weather in the field for many years, including Hurricanes Harvey, Dorian, and Beryl and the December 2021 tornado that devastated Mayfield, Kentucky. His footage has been published or broadcast by national news organizations including CBS News, NPR, CNN, and WeatherNation, and his April 2019 drone footage of a tornado in southern Oklahoma, captured from roughly fifty yards away, was widely reported in the national and trade press.

15. Petramala is a professional journalist with more than two decades of experience who has reported on extreme weather from the field since 2018, including as a national weather reporter for AccuWeather. In 2024, Clement and Petramala were among the only journalists to document the aftermath of Hurricane Beryl on the island of

SLG SANDERS LAW GROUP

SLG SANDERS · LAW GROUP ·

Carriacou, Grenada.

16. The footage Clement and Petramala created is captured at considerable personal risk, from inside or immediately behind the storms it depicts, and is most valuable in the hours and days immediately after an event, when public demand for images of the event is at its peak and licensing demand is greatest.

17. Plaintiff has devoted substantial time, skill, effort, and expense to developing its videography business and creating a portfolio of original videos.

18. Plaintiff's videos are valuable intellectual property assets that are commercially licensed to publishers, media outlets, websites, businesses, and other third parties for authorized use in both digital and print media.

19. Plaintiff is the copyright owner of numerous original video works protected under the Copyright Act, including the Videos that are the subject of this action.

20. Plaintiff maintains exclusive rights under the Copyright Act, including the rights to reproduce, distribute, license, publicly display, and otherwise exploit its copyrighted videos.

21. Plaintiff derives income from the licensing and authorized use of its copyrighted works and maintains exclusive rights in its works pursuant to the Copyright Act.

22. Plaintiff relies upon licensing revenue derived from the authorized use of its videos and actively protects its copyrighted works against unauthorized reproduction, distribution, and display. Unauthorized use of Plaintiff's videos deprives Plaintiff of licensing income, diminishes the value of its copyrighted works, and interferes with the market for authorized licenses.

23. Plaintiff has obtained active and valid copyright registrations from the United States Copyright Office (the "*USCO*") which cover many of Plaintiff's videos while many others are the subject of pending copyright applications.

24. Plaintiff regularly licenses its videos to media outlets, brands, and

commercial entities for a fee. Licenses for commercial and advertising uses, which promote a licensee's own goods or services, command higher fees than licenses for editorial news uses.

25. Plaintiff's Videos are original, creative works in which Plaintiff owns protectable copyright interests.

26. On January 9, 2024, Plaintiff first published Video 1 on its YouTube channel at URL https://www.youtube.com/watch?v=MBaV7kRrGec. A screengrab of Video 1 is attached hereto as Exhibit 1-1.

27. On April 4, 2024, Video 1 was registered by the USCO under Registration No. PA 2-467-024.

28. On August 5, 2024, Plaintiff first published Video 2 on its Facebook page at URL https://www.facebook.com/watch/?v=503869018801107. A screengrab of Video 2 is attached hereto as Exhibit 1-2.

29. On September 8, 2024, Video 2 was registered by the USCO under Registration No. PA 2-496-428.

30. On June 19, 2024, Plaintiff first published Video 3 on its YouTube channel at URL https://www.youtube.com/watch?v=A0aPENEP-6Y. A screengrab of Video 3 is attached hereto as Exhibit 1-3.

31. On September 8, 2024, Video 3 was registered by the USCO under Registration No. PA 2-496-320.

32. Each of the Videos was registered with the USCO within three months after its first publication. See 17 U.S.C. § 412(2). Accordingly, the timing limitations of 17 U.S.C. § 412 do not preclude Plaintiff from recovering statutory damages or attorney's fees for the infringements alleged herein.

33. Each of the Videos was first published with a conspicuous notice in its accompanying description stating: "**NOT FOR BROADCAST** Contact Brett Adair with Live Storms Media to license. brett@livestormsmedia.com" (the "Licensing Notice").

SLG SANDERS · LAW GROUP ·

34. The Licensing Notice informed the public, including Prestige, that the Videos were not available for unlicensed use, identified the person through whom a license could be obtained, and provided that person's contact information.

35. Live Storms Media, through Brett Adair, is Plaintiff's authorized licensing agent for the Videos and, at all relevant times, licensed the Videos on Plaintiff's behalf to news organizations and other users who requested permission to use them.

36. Plaintiff also licenses its footage through its affiliate WXChasing. Footage distributed through WXChasing carries the on-screen credit "WXChasing.com," identifying the affiliate and its website. The Weather Channel is among the news organizations licensed through WXChasing to use Plaintiff's footage in their own news coverage.

37. In creating the Videos, Clement and Petramala personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the video recordings and made each and every artistic determination necessary for the creation of the works.

38. Clement and Petramala created the Videos with the intention of them being used commercially and for the purpose of display and/or public distribution.

39. By valid written agreements, Clement and Petramala transferred to Plaintiff all right, title, and interest in and to the copyrights in the Videos, together with all claims and causes of action for past, present, and future infringement thereof, including the right to recover damages for infringements occurring before the transfers. Plaintiff is therefore the owner of the copyrights in the Videos and of each claim asserted herein.

**B. <u>Prestige's Infringing Activity</u>**

40. Upon information and belief, Prestige is the registered owner and operator of the Accounts and is responsible for their content.

41. PIEA's public business listings identify the Facebook page facebook.com/prestigeclaims as PIEA's business website. The Accounts promote public



SLG SANDERS · LAW GROUP ·

adjusting services under the brand "Prestige Claims Consultants," display the telephone number (786) 556-5702, and carry the slogan "We work for you, not the insurance company."

42. PCC's website, prestigeclaim.net, markets the "Prestige Claims" public adjusting business and links to the Instagram account prestigeclaims. In 2024, when each of the Infringements was published, Cristina Sanchez was both the President of PIEA and an officer of PCC, and PIEA has reported PCC's federal employer identification number as its own in a filing with the Florida Department of State.

43. The Accounts are a part of and used to advance Prestige's commercial enterprise.

44. Prestige is a public adjusting firm. Public adjusters represent policyholders in presenting and negotiating insurance claims, including claims for property damage caused by hurricanes, tornadoes, flooding, and other severe weather.

45. Prestige markets its public adjusting services to property owners under the name "Prestige Claims." The "Prestige Claims" business advertises that it has been helping Floridians recover money from insurance companies since 2008, that it serves all Florida counties "[f]rom the Keys to the Pan Handle," and that its adjusters are "highly trained in Hurricane Zone protocol."

46. Prestige is paid only if, and to the extent that, its clients recover on their insurance claims. The "Prestige Claims" business advertises "No upfront fees. We get paid if you get paid," and, to Spanish-speaking property owners, "Sin cargos por adelantado. Nos pagan si te pagan." Under Florida law, a public adjuster's fee is a percentage of the insured's claim payment, capped at ten percent for claims arising from an event that is the subject of a declaration of a state of emergency by the Governor and twenty percent for other claims. Fla. Stat. § 626.854(11)(b).

47. Prestige offers prospective clients a free inspection or evaluation of their

storm damage, which serves as the entry point to a fee-generating engagement.

48. Prestige's revenue therefore rises and falls with the number and size of the storm-damage claims it signs up. Each property owner Prestige persuades to retain it after a hurricane, tornado, or flood represents a share of that owner's insurance recovery, and the period in which owners decide whether to retain a public adjuster begins as soon as the storm passes.

49. Prestige uses the Accounts to advertise its public adjusting services and to solicit storm-damage claims, including through posts displaying Prestige's telephone number and slogans such as "We work for you, not the insurance company."

50. Upon information and belief, the Accounts form part of Prestige's commercial enterprise and are used to attract potential customers, promote Prestige's services, increase public visibility, generate business opportunities, and enhance Prestige's brand recognition.

51. Prestige used the Accounts, and the Videos, as lead-generation tools. Dramatic footage of fresh storm destruction captures the attention of property owners in and near the affected communities at the moment they are assessing their own losses, and Prestige paired each Video with an invitation to contact Prestige to pursue an insurance claim. The Videos were thus the centerpiece of advertisements designed to convert viewers into contingency-fee clients.

52. Upon information and belief, Prestige knew or should have known that the Videos were protected by copyright, including because the Videos were of professional quality and distributed through commercial channels. Despite this, Prestige used the Videos without seeking permission or obtaining a license.

53. Prestige knew, or at minimum recklessly disregarded, that the Videos were protected by copyright and unavailable for unauthorized commercial use. Each Video was first published with the Licensing Notice expressly stating that the footage was "NOT FOR BROADCAST" and providing contact information to obtain a license. Prestige



SLG SANDERS LAW GROUP

nevertheless reproduced the Videos within hours or approximately one day of their initial publication, without contacting Plaintiff or the identified licensing representative and without obtaining a license.

54. On or about January 9, 2024, without permission or authorization from Plaintiff, Prestige willfully and volitionally reproduced and publicly displayed Video 1 on Account 1 as part of an on-line social media post at URL: https://www.instagram.com/p/C15nvD1LFpZ/ ("*Infringement 1*"). A copy of a screengrab depicting Infringement 1 is attached hereto as Exhibit 2-1.

55. On or about January 9, 2024, without permission or authorization from Plaintiff, Prestige willfully and volitionally reproduced and publicly displayed Video 1 on Account 2 as part of an on-line social media post at URL: https://www.facebook.com/reel/309649314816742 ("*Infringement 2*"). A copy of a screengrab depicting Infringement 2 is attached hereto as Exhibit 2-2.

56. Infringement 1 and Infringement 2 were published on January 9, 2024, the same day Plaintiff first published Video 1, and each was accompanied by the following caption: "Devastating tornadoes hit Panama City, leaving behind SO much destruction. Those affected are in our thoughts and prayers. If you or anyone you know have been affected, please contact us ASAP! Our team of public adjusters is ready to take on your case and represent you against your insurance company to make sure you receive the compensation you deserve to start rebuilding your life after this natural disaster."

57. On or about August 6, 2024, without permission or authorization from Plaintiff, Prestige willfully and volitionally reproduced and publicly displayed Video 2 on Account 1 as part of an on-line social media post at URL: https://www.instagram.com/p/C-WVey5udz2/ ("*Infringement 3*"). A copy of a screengrab depicting Infringement 3 is attached hereto as Exhibit 2-3.

58. Infringement 3 was published on August 6, 2024, one day after Plaintiff first published Video 2, and was accompanied by the following caption: "Storm Debby has



SLG SANDERS LAW GROUP

passed, but the recovery process is just beginning. Let us help you get the most out of your insurance claim. We're here to support you every step of the way."

59. On or about June 19, 2024, without permission or authorization from Plaintiff, Prestige willfully and volitionally reproduced and publicly displayed Video 3 on Account 1 as part of an on-line social media post at URL: https://www.instagram.com/p/C8aiHOTOqY-/ ("*Infringement 4*"). A copy of a screengrab depicting Infringement 4 is attached hereto as Exhibit 2-4.

60. Infringement 4 was published on June 19, 2024, the same day Plaintiff first published Video 3, and was accompanied by the following caption: "Prestige is on your side! Give us a call for a FREE evaluation today. Let us help YOU!" Prestige also superimposed its own advertising text over Video 3, stating: "If you or anyone you know have been affected or on this tropical storms path, please reach out. We are ready to examine your policy and ensure your are covered." [sic] Infringements 1 through 4 are referred to collectively as the "Infringements."

61. In each instance, Prestige did not use the Videos to report on, comment on, or criticize the Videos themselves. Prestige used the Videos as advertising content to solicit insurance-claim business from property owners in the communities depicted in the Videos.

62. Prestige published each of the Videos within a day of its first publication, while the events depicted were unfolding and public demand for the footage was at its highest. Upon information and belief, Prestige obtained the Videos by copying versions published by news organizations licensed to use them. Those versions identified the footage as professional news footage that did not belong to Prestige. The copy of Video 3 that Prestige published bears the on-screen credit "WXChasing.com," which identifies Plaintiff's affiliate WXChasing and its website, together with the logo of The Weather Channel, Plaintiff's licensee. Prestige's posts of Video 2 and Video 3 identify their audio as originating from The Weather Channel. Prestige thus published Video 3 with the name of Plaintiff's affiliate displayed on the footage itself, yet never contacted WXChasing,

SLG SANDERS LAW GROUP

Plaintiff, or Live Storms Media to request a license. The Weather Channel's license to use Plaintiff's footage in its own news coverage does not extend to Prestige, and Prestige never obtained a license of its own.

63. Prestige never contacted Plaintiff, Brett Adair, or Live Storms Media to request a license or permission to use any of the Videos.

64. The Infringements are copies or substantially similar copies of Plaintiff's Videos, including protectable elements such as composition, subject matter, timing, angle, lighting, perspective, and overall expressive content.

65. The Infringements each include a URL ("*Uniform Resource Locator*") that was accessible to the public and remained available for viewing for a non-transitory period of time.

66. Upon information and belief, Prestige takes an active and pervasive role in the creation, selection, acquisition, licensing, editing, publication, posting, promotion, and display of content appearing on the Accounts, including Plaintiff's Videos.

67. Prestige exercised control over the content published on its Accounts and was responsible for selecting, uploading, and displaying the Videos. Prestige used the Videos in furtherance of its commercial interests and derived financial benefit from increased user engagement, brand promotion, and/or sales.

68. Upon information and belief, Prestige directly contributes to and exercises control over the content published on the Accounts by, inter alia, utilizing employees, agents, contractors, administrators, editors, moderators, social media managers, and other representatives acting on its behalf (collectively, the "*Representatives*").

69. Upon information and belief, Prestige vested its Representatives with actual and/or apparent authority to create, select, upload, publish, edit, modify, remove, monitor, and otherwise manage content appearing on the Accounts on Prestige's behalf.

70. Upon information and belief, the Representatives acted within the course and scope of their agency, employment, contractual relationship, and/or other authorized



SLG SANDERS LAW GROUP

relationship with Prestige when creating, selecting, uploading, publishing, displaying, promoting, and/or distributing the content containing Plaintiff's Videos.

71. Upon information and belief, Prestige authorized, directed, ratified, approved, and/or knowingly permitted the actions of its Representatives with respect to content appearing on the Accounts, including the content containing Plaintiff's Videos.

72. Upon information and belief, the Representatives actively reviewed, monitored, edited, managed, moderated, and otherwise exercised control over content appearing on the Accounts. As a result, Prestige had actual and/or constructive knowledge of the content published thereon, including the Infringements.

73. Upon information and belief, Prestige maintained the right and ability to supervise, control, review, approve, modify, remove, and otherwise regulate content appearing on the Accounts and exercised such control through its Representatives acting within the course and scope of their authority.

74. Upon information and belief, the Videos were intentionally and willfully selected, published, displayed, and distributed by Prestige.

75. The Accounts include other content that the platform labels "AI Content," indicating that the content was created or edited using artificial intelligence. None of the Infringements bears that label. Upon information and belief, the Infringements were not generated by an automated or artificial-intelligence tool, but were selected, downloaded, edited, captioned, and uploaded by Prestige or its Representatives, including, in the case of Infringement 4, by superimposing Prestige's own advertising text over Video 3.

76. Upon information and belief, Prestige engaged in the Infringements knowingly and in violation of applicable United States copyright laws.

77. Upon information and belief, Prestige exercised editorial, managerial, and operational control over the content appearing on the Accounts.

78. Upon information and belief, Prestige has the legal right and ability to control and limit the infringing activities on its Accounts and exercised and/or had the right and



SLG SANDERS LAW GROUP

ability to exercise such right.

79. Upon information and belief, Prestige monitors the content on its Accounts.

80. Upon information and belief, Prestige has received a financial benefit directly attributable to the Infringements.

81. Upon information and belief, the Infringements increased engagement with the Accounts and generated additional audience traffic, brand visibility, consumer interest, promotional value, and commercial value for Prestige.

82. Upon information and belief, Prestige distributed the Infringements to a broad audience through the Accounts and derived commercial value from the resulting user traffic, engagement, advertising impressions, and/or promotional exposure.

83. Upon information and belief, Prestige derived commercial value from the resulting audience engagement, publicity, promotional exposure, brand visibility, audience growth, increased traffic, and related business-development opportunities associated with the Infringements.

84. Upon information and belief, Prestige at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

85. Prestige's use of the Videos harmed the actual market for the Videos.

86. Prestige's use of the Videos, if widespread, would harm Plaintiff's potential market for the Videos.

87. Prestige used the Videos for commercial purposes to promote its public-adjusting services and solicit potential customers with storm-related insurance claims, thereby deriving promotional and commercial value from Plaintiff's copyrighted works without paying the license fee otherwise required for such use.

88. Prestige's unauthorized use usurps the market for licensed uses of the Videos and undermines Plaintiff's ability to license its work to other commercial entities.

89. On or about August 26, 2026, Plaintiff, through counsel, notified Prestige of the infringing activity described herein and demanded that Prestige cease and desist from



SLG SANDERS LAW GROUP

its unauthorized use of Plaintiff's copyrighted work and compensate Plaintiff for its unauthorized use thereof.

90. Despite receiving notice of Plaintiff's claims and being afforded multiple opportunities to resolve the matter amicably, Prestige failed and/or refused to adequately address Plaintiff's claims, thereby necessitating the commencement of this action.

91. The commencement of this action was therefore necessary to protect Plaintiff's rights under the Copyright Act.

92. As a result of Prestige's misconduct, Plaintiff has been substantially harmed.

**FIRST CAUSE OF ACTION**
***(Direct Copyright Infringement, 17 U.S.C. §501 et seq.)***

93. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 93, as though set forth in full herein.

94. The Videos are original, creative works in which Plaintiff owns valid copyrights.

95. The Videos are properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

96. Plaintiff has not granted Prestige a license or the right to use the Videos in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Prestige.

97. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Prestige improperly and illegally copied, reproduced, distributed, adapted, and/or publicly displayed works copyrighted by Plaintiff thereby violating one of Plaintiff's exclusive rights in its copyrights.

98. Prestige also prepared an unauthorized derivative work based upon Video 3 by superimposing its own advertising text over the footage, in violation of Plaintiff's

SLG SANDERS · LAW GROUP ·

exclusive right under 17 U.S.C. § 106(2).

99. Prestige's reproduction of the Videos and display of the Videos constitutes willful copyright infringement.

100. Upon information and belief, Prestige willfully infringed upon Plaintiff's copyrighted Videos in violation of Title 17 of the U.S. Code, in that Prestige used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Videos without Plaintiff's consent or authority.

101. As a result of Prestige's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Prestige's profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Prestige for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c).

102. As a result of the Prestige's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Prestige.

103. As a result of Prestige's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 502.

**SECOND CAUSE OF ACTION**
***(Vicarious Copyright Infringement)***

104. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 93, as though set forth in full herein.

105. This claim is pleaded in the alternative, to the extent any of the Infringements was uploaded or published by a Representative or other person acting on Prestige’s behalf rather than by Prestige itself.

106. Each person who uploaded and displayed the Videos on the Accounts



SLG SANDERS · LAW GROUP ·

SLG SANDERS · LAW GROUP ·

directly infringed Plaintiff's exclusive rights under 17 U.S.C. § 106.

107. Prestige had the right and ability to supervise and control that infringing activity, including because Prestige owns and controls the Accounts, authorized its Representatives to publish content on them, and could remove any post from them at any time.

108. Prestige received a direct financial benefit from the infringing activity because the Videos were the centerpiece of advertisements soliciting contingency-fee public adjusting engagements and drew prospective clients to Prestige's services.

109. Prestige is therefore vicariously liable for the infringement of Plaintiff's copyrights in the Videos.

110. As a result, Plaintiff is entitled to actual damages and Prestige's profits under 17 U.S.C. § 504(b) or, at Plaintiff's election, statutory damages under 17 U.S.C. § 504(c), together with costs and reasonable attorney's fees under 17 U.S.C. § 505.

**THIRD CAUSE OF ACTION**
***(Contributory Copyright Infringement)***

111. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 93, as though set forth in full herein.

112. This claim is pleaded in the alternative, to the extent any of the Infringements was uploaded or published by a Representative or other person acting on Prestige's behalf rather than by Prestige itself.

113. Prestige knew or had reason to know of the infringing activity, including because the Infringements were published on Prestige's own Accounts to advertise Prestige's own services, beneath captions identifying Prestige and soliciting business for it.

114. Prestige induced, caused, or materially contributed to the infringing activity by directing and authorizing its Representatives to publish storm-related promotional content on the Accounts, by furnishing the Accounts through which the Videos were

displayed, and by maintaining the Infringements on the Accounts.

115. Prestige is therefore contributorily liable for the infringement of Plaintiff's copyrights in the Videos.

116. As a result, Plaintiff is entitled to actual damages and Prestige's profits under 17 U.S.C. § 504(b) or, at Plaintiff's election, statutory damages under 17 U.S.C. § 504(c), together with costs and reasonable attorney's fees under 17 U.S.C. § 505.

## JURY DEMAND

117. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully requests that the Court enters a judgment finding that Prestige has infringed on Plaintiff's rights to the Videos in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and monetary relief as follows:

a. finding that Prestige directly, vicariously, and/or contributorily infringed Plaintiff's copyright interest in and to the Videos by copying, reproducing, distributing, publishing, and publicly displaying them without a license or consent;

b. for an award of actual damages and disgorgement of all of Prestige's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendants, jointly and severally, for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Prestige from any infringing use of any of Plaintiff's works;

d. for costs of litigation and reasonable attorney's fees against Prestige pursuant to 17 U.S.C. § 505;

e. for pre-judgment interest as permitted by law; and

SLG SANDERS LAW GROUP

f. for any other relief the Court deems just and proper.

DATED: October 7, 2026

**SANDERS LAW GROUP**

By: *\/s/ Craig Sanders*

Craig Sanders, Esq. (Fla Bar 0986586)
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 146594

*Attorneys for Plaintiff*

SLG SANDERS · LAW GROUP ·